Weis, Appellee, *v.* Weis et al., Appellants.

(No. 351—Decided December 13, 1945.)

Mr. *Rex W. Hanna* and Mr. *Alfred F. Brindley, Jr.,* for appellee.

Mr. *Roy Warren Roof* and Mrs. *Bernedette R. Hines,* for appellants.

Jackson, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hardin county, Ohio.

The only pleading in the Common Pleas Court is the petition, which was followed by an entry of the court reciting in substance that no issue having been made up by the pleadings the issue is made that the issue of fact be submitted to and tried by the jury, to wit: "Is the writing produced the last will of Fred S. Weis, deceased?," which is in accordance with the provisions of Section 12082, General Code.

After four days trial the jury returned a verdict signed by eleven members thereof, finding that the proffered paper writing was not the valid last will and testament of decedent, Fred S. Weis. Motion for a new trial was filed and overruled and judgment was entered on the aforesaid verdict. In due course, an appeal on questions of law was taken to this court.

The undisputed facts are that the testator, Fred S.

Weis, on May 20, 1943, at approximately 10:30 a. m., entered the San Antonio Hospital at Kenton, Ohio; that on June 7, 1943, while in the hospital and on the 18th day in the hospital, he signed the purported last will and testament in the presence of his personal physician, Dr. E. S. Protsman, and the attorney who drafted the document, Bernedette R. Hines, as attesting witnesses; that the testator occupied room number 321 in the hospital until June 6, 1943, when he was removed to room number 210 in the same hospital; and that the testator died at 7:20 p. m., on June 15, 1943, the 26th day of his confinement in the hospital.

The assignments of error consist of 14 specifications.

No prejudicial error occurred in the overruling of the motion for a new trial, or in the charge of the court to the jury, and the verdict is not contrary to law, not contrary to the evidence or is it against the manifest weight of the evidence. This disposes of assignments of error Nos. 1, 7, 10, 11 and 12.

The arguments of counsel to the jury after the completion of the evidence are not contained in the record, for which reason assignment of error No. 8 is overruled, no consideration being given thereto.

The defendants failed to renew their motion for a directed verdict after the close of all the evidence, for which reason assignment of error No. 13 is not well taken.

Within the general issue as made up by the record there may be included and generally are included a number of issues special in their nature, which are: 1. That the testator was lacking in mental capacity. 2. That the testator was unduly influenced as that term is defined by law. 3. That there was a defective signing or attestation. 4. That the testator was not of legal age. *Niemes* v. *Niemes,* 97 Ohio St., 145, 150, 119 N. E., 503.

Also, there is the issue as to the capacity of the plaintiff to bring the action, as well as to what his relationship might be to the testator.

In consideration of the fact that the plaintiff in the case was the adopted son of testator it was proper for him to show this relationship by the records of the court wherein the adoption proceeding occurred. Since the adoption documents were identified and were offered to prove that fact, it was proper that as an exhibit it should go to the jury during its deliberations. There is no merit in assignment of error No. 14.

There was no prejudicial error or abuse of discretion on the part of the court as to assignment of error No. 9, for which reason it is overruled.

Assignments of error Nos. 2 and 5 are not well taken and are overruled.

A specially qualified witness is one who has had special opportunities for observation and who testifies as to facts based thereon, as distinguished from the true expert who has the knowledge, skill, experience, and training adequate to make his judgment an intelligent one helpful to the jury and who testifies upon the basis of assumed facts stated in a hypothetical question. *Agler* v. *Schine Theatrical Co., Inc.*, 59 Ohio App., 68, 17 N. E. (2d), 118, 27 Ohio Law Abs., 194.

Assignments of error Nos. 3, 4 and 6 pertain to the admission of the hospital records and the evidence adduced therefrom by the testimony of various witnesses in connection with such hospital records.

Effective September 6, 1939, Section 12102-23, General Code, was passed by the Legislature, and reads as follows:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or the person who made such record or under whose su-

pervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.''

The trial court must have been of the opinion that the sources of information, method and time of preparation were such as to justify their admission because the hospital records of San Antonio Hospital were admitted.

The records consist of the entrance slip, the physician's directions, urine and blood analyses and the daily charts of the general nurses who had charge of the testator as a patient from the time of his entrance into the hospital until his decease. There were no special nurses. The records do not show any prognoses or diagnoses by the attending physician.

In addition to the admission of the hospital records, as above noted, the doctor and the various nurses testified orally and were cross-examined at length as to the records.

The two questions which present themselves to this court in consideration of assignments of error Nos. 3, 4 and 6, are: 1. Are hospital records, as such, proper evidence by virtue of Section 12102-23, General Code? 2. If admissible, what effect has Section 11494, General Code, upon the hospital records' admissibility?

Section 11494, General Code, is the privileged communication section, wherein a physician shall not be permitted to testify concerning a communication made to him by his patient in that relation, or his advice to his patient.

The contention is made that the hospital records, as such, even though made by the nurses, are subject to the general supervision of the physician of the testator

and therefore become privileged communications, and should be excluded.

The courts have had some difficulty with this problem. In the case of *Prudential Ins. Co.* v. *Heaton,* 20 Ohio Law Abs., 454, the Court of Appeals for the Third Appellate District, found that hospital records are at the most only memoranda of the facts, and not public records and are inadmissible under the privileged communication rule, although they may be used to refresh the recollection of a witness having knowledge of the facts shown. This decision was prior to the effective date of Section 12102-23, General Code.

Hospital graphs showing a patient's temperature, pulse and respiration while in the hospital and other records as to the patient's condition, showing medication and treatment, all made by nurses in attendance, where limited in effect to statements of fact and excluding opinions and diagnosis, were admitted as sufficiently worthy of credence and of sufficient trustworthiness to be admitted in evidence under the "shop book" rule exception to the hearsay rule. *Steiger* v. *Coca Cola Bottling Co.,* 31 Ohio Law Abs., 215; *Kellogg* v. *Industrial Commission,* 60 Ohio App., 22, 28, 19 N. E. (2d), 511; *Contra: Lamarand* v. *National Life & Accident Ins. Co.,* 58 Ohio App., 415, 16 N. E. (2d), 701.

Those cases were decided before September 6, 1939.

"Shop book" records, when the original entries are made at the time of the transaction, become a part of the *res gestae* of the transaction to which they relate and as such are competent where the transactions themselves are in issue. *Leonard, Jr.,* v. *State,* 100 Ohio St., 456, 127 N. E., 464.

In the case of *Eikenberry* v. *McFall,* 33 Ohio Law Abs., 525, 36 N. E. (2d), 27, decided on January 14, 1941, after the effective date of Section 12102-23, Gen-

eral Code, the court sustained the exclusion of hospital records and also found that Section 12102-23, General Code, does not inferentially repeal Section 11494, General Code, nor may it be considered as an exception to the general provisions of such general privilege statute, and that an attending physician's report concerning a patient in a hospital is privileged notwithstanding it is contained in the hospital record offered in evidence.

In *Lumpkin* v. *Metropolitan Life Ins. Co.,* 75 Ohio App., 310, 62 N. E. (2d), 189, the court held that a record made in a general public hospital showing diagnoses and treatment of an insured, and identified by the custodian of the official records of the hospital, made in the regular course of the operations thereof, may be introduced in evidence. That case was certified to the Supreme Court as a conflict case with the cases of *Eikenberry* v. *McFall* and *Lamarand* v. *National Life & Accident Ins. Co., supra.*

However, in *Lumpkin* v. *Metropolitan Life Ins. Co.,* as reported in 146 Ohio St., 25, 64 N. E. (2d), 63, the Supreme Court found it neither necessary nor proper to interpret Section 12102-23, General Code.

The modern rules with reference to the admission of hospital records, as formulated from the decisions of other states, are as follows:

If the hospital records are admissible a witness may use them to the fullest extent, incorporating the records with his testimony and delivering it as an exhibit to the jury as a part thereof. The entries then become no longer hearsay but are adopted by the witness on the stand and he is subject to the fullest cross-examination on that as on all other parts of his testimony. 5 Wigmore on Evidence (3 Ed.), Section 1560.

The medical records of patients at a hospital, organized on the usual modern plan, should be admissible

on the identification of the original by the keeper. The calling of all the individual attending physicians and nurses who have co-operated to make the record, even of a single patient, would be a serious interference with the convenience of hospital management. Hence arises the necessity therefor. There is also a circumstantial guarantee of trustworthiness in these records, for the records are made and relied on in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered. They themselves rely upon the record of their own actions. Hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions occurring in the routine of a large staff are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand. And the power of the court to summon for examination the members of the recording staff is a sufficient corrective, where it seems to be needed and a *bona fide* dispute exists.

Accordingly, in some states such hospital records have by statute been made admissible. Such statutes should receive universal sanction. 6 Wigmore on Evidence (3 Ed.), Section 1707.

In view of the conflicting holdings of the Ohio courts existing at the time of the adoption of Section 12102-23, General Code, with reference to the admission of hospital records in evidence, and the modern trend to admit such records in evidence, it would seem clear that the Legislature, in the adoption of such section, intended to prescribe that notwithstanding such records may contain matters which would otherwise be privileged, such records are nevertheless admissible by virtue of the provisions of the section, and we so hold.

But assuming that notwithstanding the provisions of Section 12102-23, General Code, the hospital records admitted in the instant case contained matters which were privileged under the provisions of Section 11494, General Code, the physician employed by the testator was an attesting witness to the will and was called to the stand by the defendants and was examined by them generally as to the mental and physical condition of the testator, the course of treatment prescribed by him for the testator, the hospital records, and other facts in issue in the case. The testator, by procuring him to sign as a subscribing witness to his will, waived the provisions of Section 11494, General Code, and consented to him testifying to matters which had a bearing on his capacity to make a will, and any other fact affecting the validity of the will. *Nicholl, Exr.*, v. *Bergner*, 76 Ohio App., 245; *Knepper* v. *Knepper, Exr.*, 103 Ohio St., 529, 134 N. E., 476.

And the defendants by calling the physician as a witness and examining him generally, as above mentioned, waived any claim they may have had under the provisions of Section 11494, General Code, as to the privileged character of the communications of the physician that might appear in the hospital records. Consequently, in any view that may be taken of the matter, the hospital records were properly admitted in evidence.

The nurses were properly examined as specially qualified witnesses.

For the reasons mentioned, no errors in the particulars assigned by defendants, appellants herein, having intervened, the judgment of the lower court will be affirmed without penalty.

The judgment and reasons therefor being in conflict with the cases of *Eikenberry* v. *McFall, supra,* and

*Lamarand* v. *National Life & Accident Ins. Co., supra,* this case is certified to the Supreme Court of Ohio.

*Judgment affirmed.*

GUERNSEY and METCALF, JJ., concur.

METCALF, J., of the Fourth Appellate District, sitting by designation in the Third Appellate District.